**PRUDENTIAL PROPERTY & CASUAL-
TY COMPANY, Plaintiff,**

v.

**BATON ROUGE BANK & TRUST
COMPANY, et al., Defendants.**

Civ. A. No. 79–178–MAC.

United States District Court,
M. D. Georgia,
Macon Division.

April 29, 1982.

Charles A. Wiley, Jr., Nicholas C. Moraitakis, Atlanta, Ga., for plaintiff.

John A. Dana, Robert M. Wynne, Thomas A. Hutcheson, Clarke C. Avant, Sandersville, Ga., Wayne C. Crowe, Atlanta, Ga., Buckner F. Melton, H. Randolph Aderhold, Jr., Macon, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

This interpleader action under 28 U.S. C.A. § 1335 was brought by Prudential Property and Casualty Insurance Company in July, 1979, against eight named defendants who alleged a claim to the proceeds of a fire insurance policy on the home of Samuel G. H. Scott (hereinafter "Sam Scott"), which was destroyed by fire on March 31, 1979. The insurance proceeds totalled some $84,263.30 and were deposited into the registry of the court at the outset of this litigation. One of the claimants, First Federal Savings and Loan of Sandersville, Georgia, was a loss payee of the insurance policy and was paid some $31,588.57 and released from this action. Finally, after almost two years of essentially unnecessary and wasteful litigation since the court's June, 1980, preliminary order, and after substantial recent correspondence between the court and counsel regarding the proper disposition of this action, this case is ready for a final order for disbursement of the $52,674.73 plus accrued interest remaining of the fund.

## BACKGROUND

It is unnecessary to recount the entire lengthy, mixed-up, and perplexing history of this case, which began as a simple interpleader action, and has become one of the

most unusual cases this court has had the task of resolving.[1] It is sufficient for present purposes to summarize the court's previous orders in this action. On June 27, 1980, the court entered a preliminary order finding the claims of four judgment creditors to be valid and enforceable against the fund. A default judgment was entered against defendant Sam Scott due to his complete failure to respond to the complaint, but the court declined to enter default judgment against Graves Development, Inc. (hereinafter "Graves") since the court found that it had a possible equitable claim to the fund derived from three purported deeds to secure debt totalling some $38,550.00, filed of record in the Washington County, Georgia Superior Court. The parties were directed to address within fifteen days whether Graves had an equitable claim to the fund.

Thereafter, for over one year any meaningful discovery regarding the purported claim of Graves Development, Inc. was purposefully and inexplicably thwarted by the principal(s) of Graves and their retained attorney, whose professional incompetence was exhibited in a number of instances in this case. By order dated March 10, 1981, it was ordered that the depositions of the principals of Graves would be taken by counsel for Prudential, failing which Graves' claim to the fund would be dismissed. When the attempted taking of these depositions was again unsuccessful, the court set a hearing for July 13, 1981, and ordered that unless the principals of Graves appeared at the hearing and testified in support of their claim and produced the originals of the pertinent documents, books, and records of the corporation, etc., the claim would be dismissed. As could have been expected, the principals of Graves failed to appear at the hearing in person, but again relied on their bungling attorney to try and prove their claim with insufficient evidence. By orders dated July 15, 1981, and July 28, 1981, the court dismissed the claim of Graves Development, Inc., and ordered that the funds be dis-

bursed to the five defendants with valid claims to the fund, with the remainder to be returned to plaintiff Prudential since no other valid claims to the fund remained outstanding.

Soon thereafter Sam Scott, who until that time had remained a mystery, moved the court through the Macon, Georgia law firm of Sell and Melton to set aside the default judgment entered against him back in June, 1981, on grounds that he was an innocent party and had failed to appear in this action simply because he believed there would be nothing left of the fund after payment of his creditors. The court's previous order of disbursement was stayed, and after a hearing on the motion, the court determined that there were good grounds to set aside the default judgment against Sam Scott and the case was opened for further proceedings.

## VALIDITY OF CLAIMS TO THE FUND

The court has previously determined that the claims of Baton Rouge Bank and Trust Company, Sandersville Builders Supply, First National Bank of Atlanta, Smith Sheppard Concrete Company, and Vernon Tooke, d/b/a Sandersville Well Company, are valid and allowable in full with interest. Although Sandersville Well Company obtained a perfected materialman's lien but apparently has never obtained a personal judgment against Sam Scott, it has been conceded throughout this case that its insubstantial claim is valid and should be allowed, and its attorney has participated in this action based upon that assumption. Therefore, that claim will be allowed.

The evidence originally presented by the attorney for Graves Development, Inc. in support of its claim against the fund consisted of three deeds to secure debt. Later, at the July 13, 1981, hearing, Graves' attorney submitted copies of a promissory note, a warranty deed, a map of the property of Sam Scott, and a number of cancelled checks payable to Sam Scott or his mother.

---

1. The incredible history of this case is well-summarized in Prudential's brief in support of

its motion for attorneys fees and motion for a constructive implied trust.

However, under the circumstances of this case, and without the testimony of Dana Graves Scott, the owner and principal officer of Graves Development, Inc. and former wife of Sam Scott, the court found this evidence insufficient to establish the validity of Graves' claim. At the October 9, 1981, hearing on Sam Scott's motion to set aside the default, Sam Scott testified that the claim of Graves Development, Inc. was in fact valid. In addition, through the efforts of counsel for both Prudential and Sam Scott, the deposition of Dana Graves Scott was finally taken on January 8, 1982. Her deposition testimony, along with the documentary evidence and the testimony of Sam Scott, at last establishes that the claim of Graves Development, Inc. is valid.

The fact that Graves has a valid claim for some $38,550.00 plus interest redoubles the court's puzzlement over Dana Graves' refusal to give testimony to prove the claim and her willingness to abandon the claim rather than testify. Her testimony, as well as that of Sam Scott, could have brought an end to this case long ago. Under these circumstances, the court cannot help but question whether Dana Graves Scott and Sam Scott were accurately informed by Graves' attorney regarding this case. It appears that all of the facts underlying this case will never be known.

### ATTORNEYS FEES

■ Plaintiff Prudential has moved the court to assess against the interpleader fund the total amount of its attorneys fees incurred in this action, and the court has previously expressed its intention to award Prudential reasonable attorneys fees to the extent the law allows. A district court has the discretionary authority to award attorneys fees and costs to a plaintiff in an interpleader action. 7 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1719 at 476–488 (1st ed. 1972); 3A,

*Moore's Federal Practice*, § 22.16(2) and 22–166 to 22–177 (2d ed. 1982).[2]

■ While attorneys fees and costs incurred in bringing an interpleader action may be awarded to an interpleader plaintiff on the theory that the interpleader plaintiff has prompted early litigation and resolution of conflicting claims to the fund thus preventing dissipation and should not have to pay attorneys fees to guard himself against harassment of multiple actions, a number of courts have held that attorneys fees should not be awarded to an insurance company in an interpleader action where the claims to the fund are of the type that arise in the ordinary course of business and are not difficult to resolve. *See, Travelers Indemnity Co. v. Israel*, 354 F.2d 488 (2nd Cir. 1965); *Companion Life Ins. Co. v. Schaffer*, 442 F.Supp. 826, 830 (S.D.N.Y.1977); *Minnesota Mutual Life Ins. Co. v. Gustafson*, 415 F.Supp. 615, 617–619 (W.D.Ill.1976); *Manufacturers Life Ins. Co. v. Johnson*, 385 F.Supp. 852, 854 (E.D.Va.1974); *Aetna Life Ins. Co. v. Harley*, 365 F.Supp. 1210, 1215 (N.D.Ga.1973).

The reasons for denying attorneys fees and costs in these circumstances were well-stated in *Gustafson, supra*, to wit:

" . . . attorneys' fees should not be granted to the stakeholder as a matter of course in interpleader actions concerning the proceeds of insurance policies. Although it is true that an interpleader action benefits both claimants and the courts by promoting expeditious resolution of the controversy in one forum, the chief beneficiary of an interpleader action is the insurance company. An inevitable and normal risk of the insurance business is the possibility of conflicting claims to the proceeds of a policy. An interpleader action relieves the company of this risk by eliminating the potential harassment and expense of a multiplicity

2. Among the factors to be considered in determining a fair award of attorneys fees are: (1) whether the case is simple or involved; (2) whether the stakeholder performed any unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefited the stakeholder; and (5) whether the claimants improperly protracted the proceedings. Wright and Miller, *supra*, at 486–87.

of claims and suits. Furthermore, it discharges the company from all liability in regard to the fund. It thus seems unreasonable to award an insurance company fees for bringing an action which is primarily in its own self-interest." Id., at p. 618–19.

The court agrees with this reasoning and finds it applicable here. Further, the claims of the five judgment creditors being undisputed were not difficult to resolve. For these reasons, the court declines to award Prudential attorneys fees and costs routinely incurred by it up until June 27, 1980, the date of the court's preliminary order. This results in disallowance of a total of 38 hours. However, attorneys fees incurred relative to the action filed by Graves in the DeKalb County Superior Court, service by publication on Graves and Sam Scott, and responses to motions by Graves' attorney, are not of the type regularly incurred and are allowable.

Although costs and attorneys fees may be awarded to a plaintiff who initiates the interpleader action as a disinterested stakeholder, the plaintiff who enters the conflict, for example, by contesting the ownership of the fund, will not be awarded any expenses in the absence of special circumstances. *Perkins State Bank v. Connolly*, 632 F.2d 1306 (5th Cir. 1980), *citing Phillips Petroleum Co. v. Hazelwood*, 534 F.2d 61, 63 (5th Cir. 1976), and *Moore's Federal Practice, supra.* Bad faith on the part of one or more claimants is such a special circumstance. Wright and Miller, *supra*, at 484.

After entry of the June 27, 1980, preliminary order, it was the court's responsibility to determine the validity of the disputed claim of Graves Development, Inc. To that end it was necessary that Prudential remain in the case for purposes of conducting discovery, etc. to assist the court in that determination. Prudential also was in a position as trustee of the fund and therefore had a responsibility to maintain the integrity of and preserve the fund only for those with valid claims. While denial of the claim of Graves would by a process of elimination result in retention of some of the fund by

Prudential, Prudential did not actively take a position opposing the claim of Graves with the avowed purpose of obtaining part of the fund for itself. Although by its amendment to the complaint Prudential took a more active position disputing the equitable claim of Graves and expressing an interest in the fund, special circumstances exist, to wit, bad faith on the part of Graves and its retained attorney, which justifies awarding Prudential its attorneys fees even after it became a claimant to the fund. This court has the inherent power in order to do substantial justice to assess costs and attorneys fees against offending parties who act in bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–767, 100 S.Ct. 2455, 2463–2464, 65 L.Ed.2d 488, 500–502 (1980); *Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

There is no question here that the principal(s) of Graves Development, Inc. along with their retained attorney acted in bad faith by unnecessarily multiplying proceedings, by ignoring court orders, by failing to appear for depositions, and by refusing despite several opportunities to come to court and prove Graves' claim to the fund. Substantial efforts expended by counsel for Prudential and by this court were necessitated by the bad faith of the principal(s) of Graves and their attorney, which could have been avoided if Graves had simply come into court in the beginning to support its claim. Further, the claim of Graves would never have been proven without the persistence of Prudential's attorneys. If under these circumstances Graves Development, Inc. is entitled to come into court at this late date and recover its claim from the fund, then substantial justice requires that Prudential be allowed a fair award of attorneys fees and costs to be assessed against the amount of the fund to which Graves has a claim.

However, the court does not believe that Prudential is entitled to an award of attorneys fees incurred in opposing Sam Scott's attempt to set aside the default judgment against him and recover the re-

mainder of the fund after payment of creditors with valid claims. In this respect Prudential took an active role in opposing any claim of Sam Scott, although Sam Scott was the insured and as such was entitled to any amount remaining in the fund after payment of creditors. Prudential could have remained neutral with regard to setting aside the default and sought attorneys fees incurred by it as a result of Sam Scott's initial default, to be assessed against whatever Sam Scott recovered. Although Prudential opposed setting aside the default on the grounds that Sam Scott, Dana Graves Scott, and her attorney were collaborating in some sort of scheme to defraud Prudential and the court, this court believes from the testimony at the hearing on the motion to set aside the default that Sam Scott was essentially an innocent, although less than diligent, party in this case. The actions of the principal(s) of Graves Development, Inc. and its attorney are too indirectly related to Sam Scott's motion to set aside the default to assess these fees against Graves. Although Prudential might assert a claim for these attorneys fees against Sam Scott himself, it is clear that nothing will be left in the fund for Sam Scott after payment of his creditors who have valid claims. A total of 36.5 hours relate to Prudential's opposition to Sam Scott's attempt to set aside the default judgment.

The court finds that the number of hours claimed by Prudential, with the exception of those disallowed above, are reasonable and allowable. The hourly fees claimed by Prudential's attorneys are also reasonable. Therefore, Prudential is entitled to an award of attorneys fees for 252.3 hours at $50.00 per hour and 13.5 hours at $60.00 per hour, for total attorneys fees of $13,425.00.[3] Prudential is also entitled to costs in the amount of $440.09.[4]

■ The court is also of the opinion that the attorneys for Sam Scott are entitled to an award of reasonable attorneys fees to be assessed against the amount of the fund remaining for Graves Development, Inc. The involvement of these attorneys in this case has caused the court to be presented with evidence which substantiates the claim of Graves Development, Inc. and Dana Graves Scott, whose deposition was finally taken as a result of the efforts of these attorneys. Further, these attorneys successfully represented Sam Scott in this action and by doing so benefitted both he and Graves Development, Inc. Graves Development, Inc. will be awarded the funds remaining after the payment of other creditors and attorneys, and Sam Scott will receive credit in that amount against his debt to Graves.

However, considering the above-stated factors relating to a reasonable award of attorneys fees in interpleader actions as well as the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the court believes that the fees sought by the attorneys for Sam Scott are excessive. The court believes that reasonable hourly fees for these attorneys would be as follows: Mr. Melton—$60.00/hour; Mr. Aderhold—$50.00/hour; Ms. Cole—$40.00/hour. The court also finds that the 3.5 hours claimed by both Mr. Melton and Mr. Aderhold for the hearing on the motion to set aside the default are duplicative. The presence of either one of these attorneys would have been sufficient. These hours will be allowed to Mr. Melton. Otherwise, the number of hours claimed by these attorneys are reasonable. Accordingly, the court finds that these attorneys are entitled to a total reasonable award of attorneys fees in the amount of $4,327.00. Costs for long distance tolls are overhead

---

3. Approximately one-half of the disallowed 36.5 hours relating to the motion to set aside default were subtracted from the total hours at $50.00 per hour, and one-half from the total for which $60.00 per hour is sought.

4. The first three items, totalling $60.00, are the routine costs of initiating the action. The

$35.00 claimed as costs for admission to practice in this court and the Fifth Circuit are not allowable. The entry for $66.50 is directly related to the hearing on Sam Scott's motion to set aside the default. The $608.23 claimed as miscellaneous expenses represents overhead expenses generally covered by attorneys fees.

expenses generally covered by attorneys fees and therefore are not otherwise recoverable.

Reasonable attorneys fees are also sought for the services of Dan Edward West, the Louisiana attorney who, at the request of attorneys for Sam Scott, actually located and took the deposition of Dana Graves Scott. Mr. West's fees are awardable under the same rationale supporting the award to Sam Scott's attorneys, and the court finds the hourly rate and number of hours claimed by Mr. West to be reasonable. His costs are also reasonable, with the exception of $6.00 for long distance phone calls. Accordingly, the court awards Mr. West total attorneys fees and costs of $501.25. This amount will be included in the award to the attorneys for Sam Scott, who will be responsible for making payment to Mr. West.

Finally, it is the court's opinion that the difficulties encountered by the court and counsel essentially resulted from either the negligence or professional incompetence of the attorney for Graves Development. Therefore he is not entitled to be awarded any attorneys fees by the court.

For all of the above-stated reasons, IT IS HEREBY ORDERED that the Clerk cause the $52,674.73 plus accrued interest remaining in the fund deposited by plaintiff Prudential to be disbursed at the earliest date possible in the following manner:

(1) Baton Rouge Bank and Trust Company—$11,582.41 plus interest accrued since July 24, 1979;

(2) Sandersville Builders Supply— $3,276.13 plus interest accrued since July 24, 1979;

(3) First National Bank of Atlanta— $1,403.52 plus interest accrued since July 24, 1979;

(4) Smith Shepherd Concrete Company— $372.38 plus interest accrued since July 24, 1979;[5]

(5) Vernon Tooke, d/b/a Sandersville Well Company—$1,250.00 plus interest accrued since July 24, 1979;

(6) Prudential Property & Casualty Insurance Company—$13,865.09 (attorneys fees plus costs);

(7) Sell and Melton (including fees of Dan E. West)—$4,828.25; and,

(8) Graves Development, Inc.—$16,096.95 plus the remainder of the interest accrued on the fund since July 24, 1979.

---

5. The amounts due the four judgment creditors were determined in the manner delineated in Mr. Wiley's letter to the court dated July 20, 1981, with interest accruing at the rate of seven percent from the date each claimant obtained a judgment until July 24, 1980, the date the fund was deposited with the court.