21 F.3d 380
 25 Bankr.Ct.Dec. 1094
 In re MANDALAY SHORES COOPERATIVE HOUSING ASSOCIATION, INC., Debtor.
CHASE MANHATTAN BANK, Plaintiff-Appellant,
Ralph Meyer, Creditor,
v.
MANDALAY SHORES COOPERATIVE HOUSING ASSOCIATION, INC.,
Langfred W. White, Trustee of Mandalay Shores
Cooperative Housing Association, Inc.,
Defendants-Appellees.
 No. 92-3111.
 United States Court of Appeals,
Eleventh Circuit.
 May 23, 1994.
 
 Gregg H. Metzger, Dennis M. Campbell, Mershon, Sawyer, Johnson, Dunwody & Cole, Miami, FL, for plaintiff-appellant Chase Manhattan Bank.
 Robert K. Eddy, Eddy, Gregg & Burden, Tampa, FL, for creditor Ralph Meyer.
 Richard A. Zeller, Clearwater, FL, for debtor, defendants-appellees Mandalay et al.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and RONEY, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 In this interpleader case arising out of a bankruptcy action, a savings bank seeks attorneys' fees for its role as a putative innocent stakeholder. The bankruptcy court denied the bank's application for fees, finding instead that the bank's involvement in the interpleader action was a noncompensable cost of doing business; the district court affirmed. We vacate the district court's decision and remand the case for further proceedings.
 
 
 2
 * Mandalay Shores Cooperative Housing Association, Inc. ("Mandalay") is a non-profit corporation under Fla.Stat. Ch. 617.01 (1991) and a charitable corporation under 26 U.S.C. Sec. 501(c)(3) (1988). The tenants of Mandalay Shores, an apartment complex in Clearwater Beach, Florida, incorporated Mandalay in the late 1970s with an eye toward buying Mandalay Shores from its then-owner, the Department of Housing and Urban Development ("HUD"), thereby ensuring themselves access to low-cost housing. Each tenant deposited approximately $3,200 with Mandalay, and the corporation in turn deposited in excess of $1 million with appellant Chase Manhattan Bank, N.A. ("Chase").
 
 
 3
 The plan to purchase Mandalay Shores quickly deteriorated, however, and the tenants divided into two opposing camps as to what to do with the corporation's accumulated assets. One group of tenants sought the dissolution of the corporation and the return of their deposits. Their requests largely were rebuffed by Mandalay's management, inextricably linked to the rival second group, which sought an alternative investment. Eventually, the second camp conducted a corporation meeting (from which it excluded the members of the first faction) and amended the corporation's bylaws to allow the purchase of a different apartment complex. Inevitably, much litigation ensued in both state and federal courts.
 
 
 4
 Among Mandalay's forays into the courts were three successive voluntary bankruptcy petitions filed under Chapter 11 of the Bankruptcy Code. Mandalay filed the last of these petitions--the only one relevant to this appeal--on March 31, 1986, in the United States Bankruptcy Court for the Middle District of Florida. As its primary asset, Mandalay listed the funds, now in excess of $1.5 million, deposited with Chase. On May 26, 1989, the bankruptcy judge appointed Langfred W. White as Chapter 11 Trustee for Mandalay. White subsequently ordered Chase to turn the Mandalay funds over to him. Chase initially complied by changing the name of the Mandalay account to White as Trustee for Mandalay; circumstances intervened, however, and Chase never released any moneys to him.
 
 
 5
 While the main bankruptcy case was pending under White's trusteeship, various parties initiated two related suits in federal courts. The first, Meyer v. Chase Manhattan Bank, N.A., No. 89-1734 (D.D.C.), was filed on June 16, 1989, in the United States District Court for the District of Columbia. In Meyer, Ralph Meyer and Elizabeth M. Cannon, two former tenants, individually and as class representatives for a purported charitable trust, sought a declaratory judgment that the Chase-held funds were not the property of the bankruptcy estate, but rather were held in charitable trust for the tenants. Trustee White intervened in the action, but it was Chase, on a motion to dismiss the complaint for lack of subject matter jurisdiction, that successfully petitioned the district court to dismiss the action without prejudice on December 12, 1989.
 
 
 6
 Meanwhile, Trustee White initiated the second related case, White v. Chase Manhattan Bank, N.A., Adv. 89-291 (Bankr.M.D.Fla.), an adversary proceeding filed against Chase in the main bankruptcy case. Chase answered and counterclaimed against White; it also pursued third-party claims against Meyer and Cannon in interpleader.
 
 
 7
 Immediately after the D.C. district court dismissed Meyer, Meyer and Cannon moved to dismiss the main bankruptcy action in Florida. The bankruptcy court granted their motion on March 2, 1990, dismissing the case with prejudice. 112 B.R. 440. The adversary proceeding filed by White (which included Chase's third-party claims) thus became the only active litigation concerning the Mandalay funds deposited with Chase.[1]
 
 
 8
 In its March 2 order dismissing the main bankruptcy action, the bankruptcy court directed all professionals, including counsel for Chase, to file fee applications within thirty days. Chase complied with the court's order and filed an application (which it later supplemented) for fees incurred not only in the main bankruptcy case, but also in the Washington, D.C., action and in the adversary proceeding filed by White. White filed an objection, and, on July 23, 1990, the bankruptcy court, in a terse forty-six line order, denied Chase's Application and Supplemental Application for Compensation and Reimbursement of Expenses. The heart of the order stated as follows:
 
 
 9
 This Court is satisfied that a bank's involvement in an interpleader action is a noncompensable cost of doing business, In re Jones, 61 B.R. 48 (Bankr.N.D.Tex.1986), and, therefore, the Applications should be denied. Further, this court is satisfied that no basis exists for awarding Chase reimbursement for fees and costs incurred in the [Washington, D.C.,] declaratory judgment action.
 
 
 10
 The court likewise denied Chase's motion for rehearing.
 
 
 11
 Chase appealed to the United States District Court for the Middle District of Florida under 28 U.S.C. Sec. 158(a) (1988), but that appeal proved fruitless: on October 8, 1992, the district court, in an even shorter order, denied Chase's appeal. The district court adopted the bankruptcy court's conclusion that Chase's interpleader action "should be considered a noncompensable cost of doing business;" it similarly parroted the bankruptcy court regarding the denial of fees incurred in the declaratory judgment action. The district court thus denied Chase's appeal.
 
 
 12
 It is from the district court's decision affirming the bankruptcy court that Chase now appeals. Our jurisdiction rests on 28 U.S.C. Sec. 158(d) (1988).
 
 II
 
 13
 It is axiomatic that an award of attorneys' fees and costs in an interpleader action in bankruptcy is an equitable matter that lies within the sound discretion of the bankruptcy court. Prudential Ins. Co. v. Boyd, 781 F.2d 1494, 1497 (11th Cir.1986). As such, we will reverse the bankruptcy court's decision only if the court abused its discretion. In re Red Carpet Corp., 902 F.2d 883, 890 (11th Cir.1990). A court abuses its discretion either by applying an improper legal standard or by basing an award on factual findings that are clearly erroneous. Id.
 
 III
 
 14
 Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner. A successful interpleader suit results in the entry of a discharge judgment on behalf of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied.
 
 
 15
 Attorneys' fees are justified in many interpleader actions for several reasons. First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among the claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.
 
 
 16
 In certain circumstances, however, courts have determined that attorneys' fees are not warranted. One of those circumstances, and the only one relevant here, is when a stakeholder's interpleader claim arises out of the normal course of business. Although this standard typically is applied to insurance companies, see, e.g., Prudential Prop. & Cas. Co. v. Baton Rouge Bank & Trust Co., 537 F.Supp. 1147, 1150-51 (M.D.Ga.1982); Minnesota Mut. Life Ins. Co. v. Gustafson, 415 F.Supp. 615, 619 (N.D.Ill.1976), it also has been applied to banks, see, e.g., In re Jones, 61 B.R. 48, 54 (Bankr.N.D.Tex.1986).
 
 
 17
 The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds--disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.
 
 
 18
 Banks, too, sometimes resort to interpleader in their normal course of business. For instance, when a bank agrees to be the trustee of an estate, the bank knows there is a reasonable probability that various claimants will contest the ownership of a particular asset; since the bank may allocate the costs of that contingency among all its trust customers, there is no basis for awarding the bank fees out of the corpus of the estate. When the bank is acting merely as a depository, however, there is little expectation that a dispute as to ownership will arise; in such a case, an award of fees to the bank engaging in interpleader may be appropriate.[2]
 
 
 19
 In this case, however, the bankruptcy court concluded that banks universally may not be compensated for interpleader suits. That holding is overly broad: it fails to acknowledge the potential that a bank may indeed be an innocent stakeholder entitled to attorneys' fees. The bankruptcy court's application of its too-broad legal standard constitutes an abuse of discretion; therefore, the case must be remanded for reconsideration of Chase's attorneys' fees application.[3]
 
 IV
 
 20
 It is important to delimit our holding. We are not mandating that the bankruptcy court award Chase all--or indeed, any--of the fees it seeks; certainly, many questions remain regarding the propriety of awarding fees and, if fees are awarded, the amount properly to be awarded. Since the bankruptcy court abused its discretion, however, the case must be remanded for further proceedings not inconsistent with this opinion.[4]
 
 
 21
 IT IS SO ORDERED.
 
 
 
 [1]
 Despite the dismissal of the main bankruptcy case, the adversary proceeding continued. Chase and White both moved for summary judgment; on December 10, 1990, the bankruptcy court granted Chase's motion, entering an order discharging Chase in interpleader
 
 
 [2]
 This conclusion should not be surprising. Courts have allowed fees in interpleader--even to insurance companies--"if the case involves disputes which do not ordinarily rise in the course of the insurance business...." Gustafson, 415 F.Supp. at 619. See also Baton Rouge, 537 F.Supp. at 1151 (awarding fees to insurance company for costs "not of the type regularly incurred" by an insurance company)
 
 
 [3]
 An abuse of discretion also results when the bankruptcy court's award (or, as is the case here, non-award) of attorneys' fees is based upon clearly erroneous factual findings. In its order, however, the bankruptcy court made no factual findings. With no factual findings to review, this court is powerless to determine whether the bankruptcy court abused its discretion in declining Chase's application for fees. See In re Creative Data Forms, Inc., 72 B.R. 15, 18 (E.D.Pa.1986). For this reason, too, the case must be remanded
 
 
 [4]
 The other issues raised by the parties on appeal are mooted by our decision; we therefore do not address them