[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15677
_____

D.C. Docket No. 1:13-cv-03898-TWT

METLIFE LIFE AND ANNUITY COMPANY
OF CONNECTICUT,

Plaintiff-Counter Defendant-
Appellee-Cross-Appellee,

versus

UZO AKPELE,
J.E.A.,
a minor,

Defendants-Counter Claimants-
Appellees Cross Appellants,

ANN HERRERA, in her capacity as
Temporary Administrator of The Estate
of Ignatius Esehaigbe Akpele,

Defendant-Appellant-
Cross Appellee,

AIE SURGICAL PRACTICE, LLC
DEFINED BENEFIT PLAN, a.k.a. Dr.
Ignatius Akpele Defined Benefit Plan,

Third Party Defendant-
Counter Defendant-
Appellee-Cross Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(March 29, 2018)

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and BARTLE,[*] District
Judge.

BARTLE, District Judge:

Plaintiff MetLife Life and Annuity Co. of Connecticut ("MetLife") initiated

this interpleader action under Rule 22 of the Federal Rules of Civil Procedure and

sought to pay into the registry of the district court the proceeds of an insurance

policy on the life of Dr. Ignatius Akpele, deceased.  The defendants named by

MetLife were Uzo Akpele (the widow of Dr. Akpele), J.E.A. (a minor child of Dr.

Akpele and his widow), and Ann Herrera (the temporary administrator of the estate

of Dr. Akpele).  Dr. Akpele purchased the policy in issue to fund the AIE Surgical

Practice Defined Benefit Plan ("Plan") he had established as its sole member and

trustee pursuant to the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1001 *et seq.*

---

[*] Honorable Harvey Bartle III, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

As will be discussed in more detail below, the salient issues before this court concern whether the amount deposited into the registry of the district court was correct and which defendant is entitled to the life insurance proceeds. Following resolution of these issues on summary judgment, the Akpeles and Herrera filed notices of appeal from various orders of the district court.

I

To understand this action, it is necessary to recite in some detail its involved procedural history. In the complaint filed on November 22, 2013, MetLife alleged that it could not determine the proper beneficiary under the insurance policy on Dr. Akpele's life and sought to obtain a declaration as to which defendant was entitled to receive its benefits. Shortly thereafter, the district court granted MetLife's motion to deposit into the court registry $635,562.25, which MetLife represented to be the proper amount of death benefits provided under the policy plus interest.

Herrera filed an answer to MetLife's complaint. In that answer, she alleged that Dr. Akpele's will established a trust for the benefit of his two minor children, one of whom was J.E.A., and that the will had been executed after Dr. Akpele initiated divorce proceedings against Uzo, although the divorce had not been finalized at the time of Dr. Akpele's death. Herrera admitted that the Plan had been named as owner and beneficiary of the insurance policy. She requested that the court determine to what extent Uzo Akpele would be entitled to the insurance

3

proceeds as a surviving spouse under ERISA or the terms of the Plan and that the court decide what remaining assets, if any, the estate should receive. Herrera did not file any crossclaim against the Akpeles, who were co-defendants.

Uzo and J.E.A. (collectively the "Akpeles") also filed an answer to the complaint, which included a counterclaim against MetLife. The Akpeles maintained that they were entitled in equal shares to the full death benefit and that the proper amount owed by MetLife was not $635,562.25 but $5,148,206, the full face value of the policy. The counterclaim against MetLife sought a declaratory judgment as well as damages for breach of contract, breach of fiduciary duty, and bad faith.

Thereafter the Akpeles filed a motion to join the Plan as an indispensable party and for appointment of a successor trustee for the Plan. The court granted this motion on September 29, 2014 and appointed Brent Wilson as Plan trustee. The Plan was now a defendant in this interpleader action along with Herrera, Uzo Akpele, and J.E.A.

Meanwhile on September 24, 2014, Herrera had filed a motion to enforce settlement and/or motion for partial summary judgment against the Akpeles. In that motion, Herrera asserted that in January 2014 an enforceable settlement was reached between Herrera and the Akpeles, which provided for the equal division of the policy proceeds between Dr. Akpele's estate and Uzo Akpele. According to

the motion, the settlement came about through emails and documents exchanged between counsel for Herrera and counsel for the Akpeles, although the final settlement agreement was never executed.

On October 1, 2014, the Akpeles filed an amended answer and counterclaim against MetLife. The Akpeles changed their theory of the case to assert that Uzo Akpele, as the surviving spouse of Dr. Akpele, was the sole and inalienable beneficiary of the policy under the terms of the Plan documents and ERISA. They also expanded their counterclaim against MetLife to include: (a) Count I— Declaratory Judgment and Reformation; (b) Count II—Breach of Contract; (c) Count III—Negligence and Breach of Fiduciary Duty; (d) Count IV—Bad Faith; (e) Count V—Fraud and Deceit; and (f) Count VI—Conversion.

On December 5, 2014, MetLife filed a motion for summary judgment. In that motion, MetLife asked to be dismissed from the action and discharged from all liability. It also requested a permanent injunction to preclude further litigation against MetLife as to the policy. MetLife further argued that the counterclaim filed by the Akpeles was meritless and resulted in unnecessary expense to MetLife. Finally, it sought reasonable attorneys' fees.

In support of its motion, MetLife submitted the affidavit of James McCarthy, a Senior Technical Insurance Advisor who authenticated certain business records attached to the affidavit. The records included Dr. Akpele's application for the life

5

insurance policy at issue, the policy itself, correspondence, and computer screen shots from MetLife's billing system. In conjunction with its reply brief, MetLife also submitted a complete copy of First Actuarial Corporation's ("FAC") records related to Dr. Akpele and the Plan. FAC was the Plan sponsor and administrator.

The Akpeles filed a brief in opposition to Herrera's motion for summary judgment and/or to enforce. They disputed that any final settlement had been reached with Herrera and asserted that any purported agreement would be void and unenforceable under ERISA. The Akpeles also filed a brief in opposition to MetLife's motion for summary judgment. They simultaneously moved to strike or disregard portions of the McCarthy affidavit and the attached documents on which MetLife relied on the ground they contained inadmissible hearsay.

The Akpeles also filed a countermotion for summary judgment against MetLife on their counterclaim. The Akpeles maintained that Uzo Akpele was the sole and inalienable beneficiary of the full death benefit as the surviving spouse of Dr. Akpele, or in the alternative sought reformation of the insurance policy to reflect that Uzo and J.E.A. were entitled to receive a death benefit of $5,148,206 as equal beneficiaries, and not simply the $635,562.25 deposited with the court.

The district court filed an opinion and order on the pending motions for summary judgment on September 11, 2015. The court first found that there was a genuine dispute of material fact regarding whether counsel for the Akpeles had

6

apparent authority to settle the matter with Herrera and thus denied Herrera's motion for partial summary judgment and/or to enforce the settlement. The court next denied the Akpeles' countermotion for summary judgment. In doing so, the court noted that the Akpeles had conceded that the insurance proceeds should not be paid directly to Uzo Akpele, but instead to the trustee of the Plan.

The court then granted MetLife's motion for summary judgment on each count in the Akpeles' counterclaim. The court determined that it was clear from the policy that the Plan was the beneficiary. The court also concluded that there was no evidence to dispute that MetLife correctly deposited into the registry of the court $635,562.25 instead of the $5,148,206 sought by the Akpeles. The court thus rejected the Akpeles' contract and tort claims against MetLife.

Finally, the court granted MetLife's motion for summary judgment on the claims in its complaint. The court ruled that MetLife had fulfilled its obligation as an interpleader plaintiff by turning over to the court registry the proceeds of the policy in the proper amount of $635,562.25. It dismissed MetLife from the action and granted it a permanent injunction against future litigation regarding any obligations under the policy.

The court also exercised its discretion to award MetLife its reasonable attorneys' fees incurred in defending against the Akpeles' counterclaim. It based the award of attorneys' fees on its finding that the time and expense MetLife

incurred in defending against the counterclaim went beyond the normal course of business for an interpleader insurance company, but the court did not make any explicit finding that the Akpeles had engaged in bad faith. Thereafter on October 12, 2015, MetLife filed a notice and affidavit requesting $81,347.17 in fees and $453.03 in costs. The court has not yet determined the amount of the award nor specified against whom the award would be taxed.

As noted above, the district court in its September 11, 2015 opinion and order denied Herrera's motion for summary judgment and/or to enforce a settlement with the Akpeles because of the existence of genuine disputes of material fact. On February 23, 2016, the district court began a scheduled hearing to consider evidence regarding the purported settlement. However, by this time the Plan trustee had filed an objection to Herrera's motion in which the trustee asserted that neither the Akpeles nor Herrera had authority to settle the case because the Plan was the only beneficiary under the policy. The court heard argument from counsel on this point. After a short recess, the court declared that there was "no purpose in going forward with the evidentiary hearing to enforce the settlement." It then directed the Plan trustee in open court to file a motion for disbursement of the funds from the court registry. In compliance, the trustee filed the motion on March 4, 2016.

Thereafter, on March 11, 2016, Herrera filed a renewed motion to enforce the settlement and to stay disbursement of funds by the Plan trustee. In those filings Herrera continued to maintain that a settlement had been reached between Herrera and the Akpeles and that the Akpeles should be ordered to disburse immediately one-half of any proceeds received from the Plan to Herrera in accordance with that settlement. While Herrera did not object to the Plan trustee's motion for disbursement to the Plan, she argued that any subsequent distribution by the trustee to any beneficiary should be stayed pending an evidentiary hearing and final ruling on her renewed motion to enforce the settlement.

On June 20, 2016, the district court entered an order denying Herrera's March 11, 2016 renewed motion to enforce the settlement agreement and granting the March 4, 2016 motion of the Plan trustee for disbursement of the funds to him. The court explained that the Plan was the sole beneficiary of the policy:

> The AIE DB Trust mandates that no participant or beneficiary shall have the right to "alienate, anticipate, commute, pledge, encumber, or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under [the] Plan, except the right to designate a Beneficiary or Beneficiaries . . . ." Consistent with ERISA, the Trustee is the sole beneficiary of the Plan's assets and may not alienate, assign, or otherwise make such Plan assets subject to other legal or equitable process. Furthermore, counsel for the Akpele Defendants had no authority to bind the Trustee to a settlement agreement with Dr. Akpele's Estate. Therefore, the funds in the registry of the Court must be paid to the AIE Surgical Practice, LLC Defined Benefit Plan.

The June 20, 2016 order superseded the court's September 11, 2015 opinion and order to the extent that the latter stated that genuine disputes of material fact existed as to whether a settlement had been reached between Herrera and the Akpeles. The June 20th order denied the motion to enforce the settlement without reaching the merits of whether any settlement existed. A review of the district court docket shows that the funds have yet to be disbursed from the court's registry.

Shortly thereafter, on June 23, 2016, Herrera filed a motion for clarification and/or motion to alter or to amend. Herrera sought clarification or amendment of the district court's June 20th order to "clearly state whether its Order addressed the question as to the effectiveness of any settlement between the Akpele Defendants and Defendant Herrera." Herrera took the position that the court's order "did not expressly address the question of the enforceability of the disputed Settlement Agreement as between Defendant Herrera and the Akpele Defendants, but merely held that the Trustee was not bound by any such purported agreement." In contrast, the trustee had taken the position that any settlement agreement between Herrera and the Akpeles was void ab initio. Herrera sought to avoid any argument that res judicata would bar subsequent litigation in state court between Herrera and the Akpeles regarding the alleged settlement and distribution of the funds. The

10

court denied the motion for clarification and/or to alter or amend on July 28, 2016 in an order without any opinion.

On August 25, 2016, Herrera filed her notice of appeal.  In that notice, Herrera designated the following orders for appeal:  (1) the September 11, 2015 order denying her motion to enforce settlement and/or for partial summary judgment on the ground that genuine disputes of material fact existed; (2) the June 20, 2016 order granting the Plan trustee's motion for disbursement of funds and denying Herrera's renewed motion to enforce the settlement and to request a hearing; and (3) the July 28, 2016 order denying Herrera's motion for clarification and/or to alter or amend the June 20th order.

The Akpeles also filed a notice of appeal.  They designated the court's September 11, 2015 order for appeal.  Specifically, the Akpeles disputed the court's rulings:  (1) granting MetLife's motion for summary judgment; (2) denying the Akpeles' countermotion for summary judgment; (3) denying the Akpeles' motion to strike the affidavit of James McCarthy; and (4) awarding MetLife attorneys' fees.

II

Several standards of review govern this appeal.  We review a district court's order granting summary judgment de novo and apply the same legal standards that controlled the district court's decision.  *Levinson v. Reliance Standard Life Ins.*

11

*Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001). The decision to alter or amend judgment is committed to the sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion. *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985). We also review the evidentiary rulings of the district court for abuse of discretion. *United States v. Dortch*, 696 F.3d 1104, 1110 (11th Cir. 2012). Finally, awards of attorneys' fees are reviewed for abuse of discretion. *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001).

## III

We begin with the question of the proper amount of funds to be paid by MetLife. According to the Akpeles, MetLife should be required to pay the full face value of the policy death benefit, $5,148,206, rather than the $635,562.25 it deposited into the district court's registry. They assert that the district court erred in its September 11, 2015 order in granting summary judgment in favor of MetLife and in denying their countermotion for summary judgment on this basis.[1] The Akpeles also challenge the court's September 11, 2015 order to the extent it granted summary judgment in favor of MetLife on their counterclaim.[2]

---

[1] Neither the Plan trustee nor Herrera challenges the amount of death benefits paid by MetLife into the Court's registry.

[2] The gravamen of the Akpeles' counterclaim is that MetLife has refused to pay the full amount of death benefits. The Akpeles' counterclaim also concerned the proper beneficiary

12

In his initial application for the insurance policy at issue, Dr. Akpele selected a "pension whole life" policy with a death benefit of $5,148,206. Under the policy, Dr. Akpele was required to pay an annual premium of $204,383.78. The policy set forth a death benefit and cash value provided that the required premiums were paid. However, the policy contained a non-forfeiture provision that if the annual premiums were not paid the policy would be converted to "Paid-Up" insurance with a reduced benefit.

Dr. Akpele made the first annual premium payment on the date the policy was issued, June 17, 2005. He thereafter made the required annual premium payments in 2006, 2007, and 2008. Dr. Akpele did not do so in 2009. By letter of January 5, 2010, MetLife notified Dr. Akpele that the premium payment due April 19, 2009 was not received, that the 31-day grace period for premium payment had expired, and that pursuant to the non-forfeiture provision the policy had been converted to "Paid-Up" insurance with a reduced death benefit of $516,108.[3] MetLife further notified Dr. Akpele that he could reinstate his coverage for full value according to the terms of the policy.

---

under the policy but, as discussed in more detail below, the Akpeles now admit that the Plan is the proper beneficiary under the policy.

[3] The Akpeles dispute whether Dr. Akpele received this letter and assert that it was sent to an incorrect address. The letter was sent to Dr. Akpele's correct business address but lacked a suite number.

On appeal, the Akpeles challenge the district court's finding that Dr. Akpele intentionally ceased making premium payments.  The Akpeles assert that Dr. Akpele stopped making premium payments in 2009 because MetLife failed to send a premium bill as required under the policy.  They further allege that Dr. Akpele had intended to include a "Lapse Protection Guarantee" rider to the policy, which would have waived the premium payment requirement in the event of disability or illness.[4]

The Akpeles' position, however, is contradicted by the voluminous evidence submitted before the district court, including the Akpeles' own judicial admissions.  In her affidavit submitted in opposition to MetLife's motion for summary judgment, Ms. Akpele admitted that in February 2009 she and Dr. Akpele were advised by FAC, the Plan sponsor and administrative services provider, that the Plan was overfunded and that further premium contributions could not be made effective April 19, 2009.  She further stated that FAC advised her and her husband that the MetLife policy had adequate cash value to stay in force even with cessation of premium contributions.

This is precisely what happened.  After the 2009 premium was not paid, the policy remained in force but was reduced to its cash value of $516,108 under the

---

[4] The Akpeles have also asserted that Dr. Akpele's failure to pay the 2009 premium was an inadvertent consequence of the illness that led to his death.  Georgia law, however, provides that "payment of a premium on a policy of insurance is not excused by reason of sickness." *Hipp v. Fidelity Mut. Life Ins. Co.*, 57 S.E. 892, 895 (Ga. 1907).

non-forfeiture provision.  This is consistent with the evidence submitted by MetLife in support of its motion for summary judgment, which demonstrates that Dr. Akpele intentionally ceased paying premiums to avoid overfunding the Plan and the attendant tax consequences under regulations promulgated by the Internal Revenue Service regarding the funding of defined benefit plans.  *See* 26 U.S.C. § 415.  The Akpeles have simply failed to raise a genuine dispute of material fact regarding MetLife's conduct so as to defeat summary judgment.  *See In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 885 (11th Cir. 2003).

Furthermore, the district court properly declined to reform the policy to add a lapse protection or waiver of premium rider.  The Akpeles have conceded that MetLife did not offer such a rider for whole life insurance policies such as that purchased by Dr. Akpele.  Thus there could have been no mutual mistake as required to reform the contract.  *See* Ga. Code Ann. § 23-2-30.  Moreover, under Georgia law Dr. Akpele had a duty to review the policy before entering into it and was bound by its clear terms.  *See Marett Props., Inc. v. Prudential Ins. Co. of Am.*, 307 S.E.2d 69, 71-72 (Ga. Ct. App. 1983).  Thus, it is irrelevant that the initial application submitted by Dr. Akpele may have included a request for such rider. The Akpeles may not rely on the initial application to contradict the clear language of the final policy.

Accordingly, we conclude that MetLife deposited the proper amount into the district court registry and therefore affirm the district court's September 11, 2015 order to the extent it addressed that issue.[5]

## IV

We next turn to the question of which defendant is entitled to receive the funds deposited by MetLife into the registry of the district court. On appeal, all parties now concede that the funds should be disbursed to the Plan trustee in the first instance. The relevant Plan documents provided that insurance contracts could be purchased to fund death or retirement benefits under the Plan and that "[t]he trustee shall be the sole owner and Beneficiary of each such Contract." Furthermore, the final application for the MetLife policy stated that "Dr. Ignatius E. Akpele DB Plan" was the policy owner and beneficiary. The policy also contained a "Supplement to Application for Life/Health Insurance" which stated:

> [FROM] THE INCEPTION OF THIS POLICY THE OWNER AND
> BENEFICIARY IS AS FOLLOWS:
> DR. IGNATIUS E AKPELE DB PLAN
> WITH TRUSTEE AS IGNATIUS E AKPELE AS THE TRUSTEE

---

[5] The Akpeles also challenge certain of the district court's rulings regarding evidence submitted by MetLife. In particular, the Akpeles assert that the McCarthy affidavit and attached documents, as well as the FAC records submitted by MetLife, constitute inadmissible hearsay, lack foundation, and were not properly authenticated. They also accuse MetLife of fabricating evidence. After review of the record, we see no basis to conclude that the district court abused its discretion in considering the evidence. *See Sherrin v. Nw. Nat'l Life Ins. Co.*, 2 F.3d 373, 377 (11th Cir. 1993).

16

Thus, the district court's June 20, 2016 order granting the motion of the Plan trustee for distribution of the funds was proper and will be affirmed.

As stated above, the funds have not yet been disbursed to the Plan trustee but instead remain in the district court's registry, presumably pending the outcome of this appeal. Once the funds are released to the Plan trustee, he will then distribute the money to Uzo Akpele as the surviving spouse of Dr. Akpele pursuant to the Plan documents and ERISA. *See* 29 U.S.C. § 1055. However, Herrera continues to assert that once the funds are released to the Plan trustee, any subsequent disbursement by the trustee to a beneficiary under ERISA is subject to a pre-distribution settlement agreement reached between Herrera and the Akpeles.[6] Herrera thus contends that the district court incorrectly denied her motions to enforce the settlement in its orders of September 11, 2015 and June 20, 2016. She further asserts that the district court erred when it denied her motion for clarification and/or to alter or amend in its July 28, 2016 order.

Our analysis begins with the Supreme Court's decision in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009). There, a DuPont employee designated his wife as the sole beneficiary of his ERISA pension benefit plan. 555 U.S. at 289. They were subsequently divorced,

---

[6] Under the purported settlement, the Plan proceeds would be divided evenly between the estate and Uzo Akpele. Although there has been litigation in state probate court regarding Dr. Akpele's will, it appears on the record before us that any recovery by the estate would ultimately pass to Uzo Akpele in trust for her two minor children.

17

and as part of the divorce decree the wife agreed to waive her interest in her husband's pension plan. *Id.* However, the husband died without amending the plan documents to replace his ex-wife as the designated beneficiary. *Id.* The plan administrator relied on the husband's designation form and paid the funds to the ex-wife. *Id.* at 289-90. The husband's estate then brought suit against the plan administrator to recover the benefits. *Id.* at 290.

ERISA provides that plan benefits "may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).[7] As a result, the Court held that a plan administrator is "obliged to act 'in accordance with the documents and instruments governing the plan.'" *Kennedy*, 555 U.S. at 300 (quoting 29 U.S.C. § 1104(a)(1)(D)). Therefore the plan administrator "did its statutory ERISA duty by paying the benefits to [the ex-wife] in conformity with the plan documents." *Id.* In reaching this conclusion, the Supreme Court reasoned that ERISA favors uniform and efficient plan administration and that a "straightforward rule . . . lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Id.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). The Court emphasized three important ERISA objectives: (1) simple administration of plans; (2) avoiding double liability

---

[7] This provision includes an exception for "qualified domestic relations orders." *See* 29 U.S.C. § 1056(d)(3). This exception was not relevant in *Kennedy* and is likewise not relevant here.

for plan administrators; and (3) ensuring that beneficiaries receive funds promptly. *Id.* at 301.

Although the Supreme Court held that a plan administrator must distribute benefits in accordance with plan documents, it left unresolved the question of whether another avenue of recovery might be available to the estate against the ex-wife. *Id.* at 299. In a footnote, the Court stated that it did not "express any view as to whether the Estate could have brought an action in state or federal court against [the ex-wife] to obtain the benefits after they were distributed." *Id.* at 299 n.10.

Several years later in *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 134 (3d Cir. 2012), the Court of Appeals for the Third Circuit answered the question left open in *Kennedy*. The Third Circuit considered a dispute over the disposition of proceeds from a decedent's ERISA-governed pension plan. The decedent's plan named his ex-wife as beneficiary, but the ex-wife had waived her right to the pension as part of the divorce decree. 674 F.3d at 132-33. In light of *Kennedy*, the parties agreed that, notwithstanding the waiver, the plan administrator was obligated to pay the pension proceeds to the ex-wife in accordance with the plan documents. *Id.* at 132. It was what was to occur next that was in issue. The Court of Appeals held that after the plan administrator distributed the funds to the ex-wife, the estate may attempt to recover the funds by bringing suit directly against the ex-wife to enforce the waiver. *Id.*

19

The Court of Appeals stated that "to the extent that ERISA is concerned with the expeditious payment of plan proceeds to beneficiaries, permitting suits against beneficiaries *after* benefits have been paid does not implicate any concern of expeditious payment or undermine any core objective of ERISA." *Id.* at 137. Accordingly, it concluded that a post-distribution breach of contract action against the ex-wife was not barred under ERISA. *Id.* at 136.

In reaching this conclusion, the Court of Appeals cited the decisions of several state appellate courts, including the decision of the Georgia Court of Appeals in *Alcorn v. Appleton*, which held that a decedent's estate could bring a post-distribution suit for breach of contract against the decedent's ex-wife to enforce her waiver of benefits. 708 S.E.2d 390, 392 (Ga. Ct. App. 2011). The Court also cited several decisions from our sister Courts of Appeals recognizing that a party may bring an action to recover plan benefits once those benefits have been distributed. *See Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 211 (2d Cir. 2009); *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 974 (6th Cir. 2006); *Hoult v. Hoult*, 373 F.3d 47, 54-55 (1st Cir. 2004); *Trucking Emps. of N. Jersey Welfare Fund v. Colville*, 16 F.3d 52, 55 (3d Cir. 1994).

This court likewise holds as mandated by the Supreme Court in *Kennedy* that a party who is not a named beneficiary of an ERISA plan may not sue the plan for any plan benefits. A party, however, may sue a plan beneficiary for those

20

benefits, but only after the plan beneficiary has received the benefits. *See*

*Kensinger*, 674 F.3d at 132. Thus we affirm the district court's June 20, 2016

order denying Herrera's renewed motion to enforce.

Our affirmance of the June 20, 2016 order denying the renewed motion to

enforce the settlement is not based on any finding that a valid settlement agreement

did not exist. Instead, in accordance with *Kennedy* and *Kensinger*, the order is

correct because any claim by Herrera against the Akpeles was not pleaded and in

any event was not ripe for adjudication. First, Herrera had never filed a claim

against the Akpeles for breach of contract and instead sought to resolve the

contract issue through a motion to enforce the settlement in an action where the

Plan trustee was still a party. Second, she sought to obtain Plan benefits before the

benefits were disbursed to the ultimate beneficiary. Since the denial of the motion

to enforce did not and could not resolve the merits of the purported settlement,

Herrera is free to sue the Akpeles to enforce any settlement in a separate action in

which the Plan trustee is not a party but may do so only after the Plan benefits have

been distributed to the ultimate beneficiary under the Plan.

We also affirm the district court's July 28, 2016 order denying Herrera's

motion for clarification and/or to alter or amend. Under Rule 59(e) of the Federal

Rules of Civil Procedure, a court may alter or amend a judgment if there is newly-

discovered evidence or manifest errors of law or fact. *Arthur v. King*, 500 F.3d

21

1335, 1343 (11th Cir. 2007).  Herrera has failed to demonstrate that either of those circumstances applies here.  As stated above, we have concluded that the district court properly denied her renewed motion to enforce the settlement.  Accordingly, we find that the district court did not abuse its discretion.

V

We turn finally to the portion of the district court's September 11, 2015 order granting MetLife's motion for reasonable attorneys' fees.  As stated above, in that order the district court awarded to MetLife its reasonable attorneys' fees related to the Akpeles' counterclaim.  The district court took the position that an award of attorneys' fees generally is not warranted when the interpleader claim arises out of the normal course of the insurer's business, but cited the time and expense spent by MetLife in defending against the counterclaim.  *See In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 382-83 (11th Cir. 1994).  Thereafter on October 12, 2015, MetLife filed a notice and affidavit requesting $81,347.17 in fees and $453.03 in costs.  This request is still pending before the district court.

On appeal, the Akpeles assert that the district court abused its discretion in awarding attorneys' fees because it failed to make any factual finding that the Akpeles engaged in bad faith or other conduct which would warrant such an award.  According to the Akpeles, the award of attorneys' fees constitutes an

22

unlawful penalty against them for daring to challenge MetLife in the interpleader action.

At this time we do not have jurisdiction over the Akpeles' appeal to the extent it challenges the award of attorneys' fees to MetLife. Where "'[t]he amount of the fee award has not been determined,' a district court order granting attorney's fees 'is not final.'" *Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immigration Servs.*, 452 F.3d 1254, 1256 (11th Cir. 2006) (quoting *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 921-22 (11th Cir. 1995)). As stated above, the district court has not yet ruled on the exact amount of fees to be awarded. The court also has not specified whether the fees will be assessed against the Akpeles themselves or their counsel. Thus we will remand this action to the district court to address the issue in the first instance.[8]

## VI

For the aforementioned reasons, we affirm the district court's orders dated June 20, 2016 and July 28, 2016. We remand the Akpeles' appeal of the September 11, 2015 order in so far as it raised the award of attorneys' fees to MetLife. We otherwise affirm the district court's September 11, 2015 order to the extent it was not superseded by the court's June 20, 2016 order.

---

[8] Because we lack jurisdiction to consider the issue, this court takes no position on whether MetLife is in fact entitled to attorneys' fees.

23

**AFFIRMED AND REMANDED.**