[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12682
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cv-62740-RAR

USA ENTERTAINMENT GROUP,
INC., a Florida corporation d/b/a
Club Cinema,

                                                          Plaintiff-Appellant,

versus

SHERIFF GREGORY TONY, in his
official capacity; SHERIFF SCOTT
ISRAEL, in his individual capacity
and individually; WAYNE ADKINS;
CITY OF POMPANO BEACH, a
Florida municipal corporation;
LAMAR FISHER, in his individual
capacity; and CHARLOTTE
BURRIE, in her individual capacity;

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 25, 2021)

Before MARTIN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

USA Entertainment Group, Inc., doing business as Club Cinema, brought a Section 1983 suit against the city of Pompano Beach and two city officials (City Defendants) as well as three members of the Broward County Sheriff's Office (BSO Defendants). Club Cinema alleged that the defendants had violated its First Amendment right to free speech and its Fourteenth Amendment right to equal protection through "excessive policing" that eventually forced it to close. The district court granted a motion to dismiss based on the statute of limitations. But the district court allowed Club Cinema to file an amended complaint delineating later incidents, which it did. The district court then granted the City Defendants' and the BSO Defendants' motions for summary judgment. Club Cinema appeals all three of those orders. For the reasons below, we affirm.

## I.    BACKGROUND

Club Cinema was a large nightclub in Pompano Beach, Florida, which is a municipality in Broward County. Pompano Beach does not operate its own police department. Instead, it contracts with the Broward County Sheriff's Office to provide its police services.

Club Cinema has never had an easy relationship with local law enforcement. Seven and a half years ago, Pompano Beach filed suit to declare Club Cinema a

2

public nuisance because of the number of arrests and emergency medical calls at its location. In response, Club Cinema sent a cease-and-desist letter to five city officials and the sheriff, demanding that BSO stay off its property and not enter the club building, even if an officer legally bought a ticket. It threatened to file a counter suit seeking an injunction against Pompano Beach and BSO.

Instead, Club Cinema and Pompano Beach entered into a stipulated agreement in the public nuisance case. The agreement required Club Cinema to hire private security and EMTs for events, coordinate with BSO about crowd and traffic control, "specifically authorize[] … BSO[] to access and occupy all common areas … for any and all valid and customary law enforcement purposes," and increase its security measures to combat alcohol abuse and illegal drug activity. In the midst of that litigation, an independent state department revoked Club Cinema's liquor license.

Eventually Club Cinema closed its doors for good. In 2018, it filed this Section 1983 lawsuit, alleging that BSO, at the City Defendants' directive, violated its First and Fourteenth Amendment rights through "excessive and unwarranted police activities." At first, Club Cinema sought to litigate over the city's actions in 2013. But, after the district court granted a motion to dismiss based on the statute of limitations, Club Cinema amended its complaint to focus on policing at 36 concerts between 2015 and 2018.

Club Cinema argues that, during these 36 concerts, BSO enforced the law at its venue more strictly than it did at other venues because of its musical expression and because it had refused to gift a piece of its property to Pompano Beach. When the time came to support its allegations in response to a motion for summary judgment, Club Cinema relied on six exhibits.

Two of the exhibits are separate declarations by the same Club Cinema employee who was involved in day-to-day operations at Club Cinema the whole time it was in business. He states that BSO's "harassment" began shortly after he chose not to donate land to Pompano Beach and that he was present during all 36 shows during the relevant time period and saw BSO officers at all of them. He also states that at some of those 36 shows, "BSO officers would be wearing military tactical gear, balaclavas, and other military-style uniforms" and that he had videos of those encounters. But Club Cinema does not include any of those videos in support of its opposition to summary judgment.

Club Cinema does include two exhibits containing a total of seven photographs. Although those photographs now lack time stamps, several were attached to the original complaint with time stamps. They are from 2013 and 2014—outside the relevant time period for this case. So, Club Cinema is left with three or four photos, all without any indication of where or when they were taken or who took them, which mostly depict police and civilian cars parked somewhere outside.

4

The last two exhibits Club Cinema relies on are excerpts from the sheriff's and mayor's depositions in the public nuisance suit. The mayor described two Club Cinema employees coming to his private business and threatening him. He admitted that he was "heated" because he does not "take threats lightly," and he "respectfully request[s]" that no Club Cinema employee come to his private business again. The sheriff stated that he had discussed general police services with the City Defendants, but he never had a meeting about Club Cinema with any of them. He also explained that Pompano Beach citizens had complained to BSO about Club Cinema but that no one who worked for Pompano Beach had ever asked him to "crack down" on Club Cinema or suggested that it needed to be shut down. In his affidavit he also stated that he never discussed trying to "close" Club Cinema with anyone at BSO.

In response to Club Cinema's arguments, Defendants point to the history of emergency calls in Club Cinema's vicinity, which included calls about drugs, overdoses, robbery, assault, and various other felonies. They also cite two declarations and an affidavit from BSO officers explaining that because of public safety concerns, BSO would assign officers to Club Cinema during events without regard to the type of performance. Club Cinema agrees; it describes the 36 relevant events as involving a wide variety of musical genres—hip-hop, gospel, electronic dance music, country, rap, and more—and emphasizes that BSO officers were at all 36 events.

The district court granted both the City Defendants' and BSO Defendants' motions for summary judgment. It held that the City Defendants did not have the authority to direct BSO's policing activities and, more importantly, that there was no evidence in the record that BSO took any retaliatory action against Club Cinema or that it treated Club Cinema differently than other similarly situated businesses.

## II.    STANDARD OF REVIEW

We review a district court's application of the statute of limitations *de novo*. *Foudy v. Miami-Dade Cnty.*, 823 F.3d 590, 592 (11th Cir. 2016). We also review *de novo* a district court's grant of summary judgment, applying the same legal standard as the district court. *Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1003 (11th Cir. 2018).

## III.    DISCUSSION

We look first at the district court's grant of the motion to dismiss Club Cinema's claims as time-barred. Next, we turn to the district court's conclusion that Club Cinema's First Amendment claims fail because "there is no evidence of any actual retaliatory action taken against Club Cinema by BSO." Next, we address the district court's holding that Club Cinema failed to show that it was treated differently

6

than any other similarly situated business. Finally, we address Club Cinema's claims against the City Defendants.

### A. Statute of Limitations

In Florida, the statute of limitations for a Section 1983 suit is four years. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002); Fla. Stat. § 95.11(3). Club Cinema filed its first complaint on November 9, 2018. But the complaint was based on instances of alleged retaliation or discrimination from 2013 or March 2014—more than four years before the case was filed. The district court dismissed the complaint with leave to amend to complain about any discrimination occurring after November 9, 2014. Club Cinema filed an amended complaint, alleging that BSO engaged in excessive policing at 36 events in the relevant time period.

Club Cinema argues that the district court erroneously applied the statute of limitations, but we disagree. In a similar context, we have held that "the timely-filing requirement erects an absolute bar on recovery for 'discrete discriminatory or retaliatory acts' occurring outside the limitations' periods," *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)), even if "they are related to acts alleged in the timely filed charges," *Morgan*, 536 U.S. at 113. "Each incident of discrimination and each retaliatory adverse" action is separately actionable, *id.*, and

7

has a "limitations period [that] begins running the day the discrete act occurs," *Chambless v. La.-Pac. Corp.*, 481 F.3d 1345, 1349 (11th Cir. 2007). A plaintiff "can only file a charge to cover discrete acts that occurred within the appropriate time period." *Morgan*, 536 U.S. at 114 (internal quotation marks omitted). A party "lose[s] the ability to recover for [acts outside the statute of limitations]" because they can no longer "form the basis for liability." *Ledbetter*, 421 F.3d at 1179 (citing *Morgan*, 536 U.S. at 113); *cf. Hialeah*, 311 F.3d at 1102 ("'A discriminatory act which is not made the basis for a timely charge … is merely an unfortunate event in history which has no present legal consequences;' … time-barred discriminatory conduct has no legal significance." (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977))).

Club Cinema argues that it can sue over police action outside the statute of limitations under the continuing violation doctrine. We disagree. When discussing Section 1983 claims, this Court has explained that the continuing violation doctrine does not apply "to plaintiffs who were able to avoid the problem by filing within the statute of limitations." *McGroarty v. Swearingen*, 977 F.3d 1302, 1308 (11th Cir. 2020). Here, there is no question that Club Cinema could have filed within the statute of limitations. In November 2013, Club Cinema sent six cease-and-desist letters about the alleged excessive policing that it now argues violated its First and Fourteenth Amendment rights. It even threatened to take legal action. Instead, it

entered into a stipulated agreement with City Defendants to increase security measures and coordinate with BSO on event nights. All of that happened over four years before Club Cinema filed this Section 1983 action.

## B. First Amendment Retaliation Claims

Club Cinema first argues that BSO retaliated against it for exercising its First Amendment right to free speech. To prevail on this claim, Club Cinema must show that (1) its speech was constitutionally protected; (2) BSO's conduct adversely affected its protected speech, meaning BSO's conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights"; and (3) BSO acted that way because of Club Cinema's protected speech. *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019). We assume that Club Cinema's speech was constitutionally protected.  But, like the district court, we conclude that Club Cinema has no evidence on the second or third elements.

First, BSO's conduct would not "deter a person of ordinary firmness from the exercise of First Amendment rights." The evidence of BSO's conduct at Club Cinema during the relevant time period is scant. One Club Cinema employee asserted that BSO officers were present at all 36 events and that at "some" of the 36 events "BSO officers would be wearing military tactical gear, balaclavas, and other military uniforms." The only other evidence that Club Cinema points to is seven undated photographs of BSO officers. But the mere presence of police officers is not

9

a First Amendment violation, even if they are wearing riot gear. *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1316 (7th Cir. 1987). Indeed, where a club is free to and does hold its concerts and patrons are free to and do attend, "the passive attendance and visibility of the deputy sheriffs … before and during the … concert[s] [is] not a violation of First Amendment rights." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009). Club Cinema has evidence that BSO officers were present at its events. Club Cinema has no evidence of any harassment or intimidation of its patrons or any attempt to shut down any event.

Second, even if the mere presence of police were enough to state claim of retaliation, there is no evidence that the police were present because of Club Cinema's speech. Club Cinema argues that BSO retaliated against it for two reasons related to allegedly protected speech: first, because it rejected a City Defendant's solicitation for a donation, and second, because it hosted events that catered to a primarily African American audience. No evidence supports these theories. BSO officers were at all 36 events listed in its complaint without regard to the race of the audience. The genres of music at those events included hip-hop, gospel, electronic dance music, country, rap, and a ranchero band. The executive officer of the sheriff's office testified that the office policed Club Cinema for crowd-control and crime suppression. BSO also submitted evidence of emergency calls in the vicinity, which included calls about drugs, overdoses, robbery, assault, and various other felonies.

10

No evidence supports Cinema Club's theory that the BSO policed its vicinity because of its speech.

### C. Fourteenth Amendment Equal Protection Claims

Nor is there any evidence supporting Club Cinema's equal protection claim. Because Club Cinema is not a member of a protected class, it brings its equal protection claim under the "class of one" theory. To prevail under that theory, Club Cinema must prove "(1) that [it] was treated differently from other similarly situated [businesses], and (2) that [BSO] unequally applied a facially neutral ordinance for the purpose of discriminating against [it]." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009). Club Cinema does not show either.

Even assuming that Club Cinema has identified similarly situated businesses, nothing in the record suggests that BSO policed those venues differently. In fact, the only potentially relevant evidence in the record cuts against differential treatment. That evidence includes two BSO officers' statements that another nightclub was shut down in 2018 because of a history of criminal activity. And the rest of the record is silent as to BSO's presence at Club Cinema's proffered comparators. Club Cinema admits that deficiency, stating that "it has no evidence" that BSO treated "its

comparators" differently. That dearth of evidence forecloses Club Cinema's equal protection claim.

### D. Claims against the City Defendants

Club Cinema argues that the City Defendants are liable for BSO's allegedly unconstitutional actions. Because there is no evidence that BSO violated Club Cinema's constitutional rights, its claims against the City Defendants also fail. *Paez v. Mulvey*, 915 F.3d 1276, 1291 (11th Cir. 2019).

## IV.   CONCLUSION

For the foregoing reasons, the district court is **AFFIRMED**.