# Third District Court of Appeal

## State of Florida

Opinion filed September 1, 2021.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D20-1301
Lower Tribunal No. 17-1825

————————————

**Lynn Martinez-Olson,**
Appellant,

vs.

**The Estate of Dan Olson,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria Espinosa Dennis, Judge.

Sandy T. Fox, P.A., and Sandy T. Fox, for appellant.

Richard A. Schurr, P.A., and Richard A. Schurr and Bonnie M. Sack, for appellee.

Before LOGUE, GORDO, and LOBREE, JJ.

LOGUE, J.

In this post-dissolution of marriage action, the Estate of Dan Olson sought to enforce a marital settlement agreement to recover proceeds from Dan's retirement savings 401(k) plan that were distributed to Dan's former wife, Lynn Martinez-Olson, as the named beneficiary under the plan. Because Lynn waived any entitlement to her former husband's 401(k) plan proceeds under the marital settlement agreement, the Estate is entitled to bring this post-distribution action against Lynn to enforce the contractual waiver and to recover those proceeds.

**FACTS AND PROCEDURAL HISTORY**

Dan Olson and Lynn Martinez married in 1998. Dan worked as a producer for WSVN 7 News owned by Sunbeam Television Corporation. Dan participated in Sunbeam's retirement savings 401(k) plan which is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Dan executed a beneficiary designation form, naming his wife, Lynn, as the first beneficiary and his "living children"[1] as the second beneficiaries under the 401(k) plan.

In 2017, Dan and Lynn divorced. A final judgment of dissolution of marriage was entered ratifying a marital settlement agreement

---

[1] Dan had two children from a prior marriage. Two additional children were born of the marriage between Dan and Lynn. All four children are now adults.

2

("Agreement") drafted by Lynn's counsel and signed by the former couple.

The Agreement provides, in relevant part:

**ARTICLE IX**
**RETIREMENT**

9.1    Each party shall receive any and all benefits existing by reason of his or her past, present, or future employment or military service, including but not limited to any profit-sharing plan, retirement plan, Keogh plan, employee stock option plan, 401(k) plan, employee savings plan, military retired pay, accrued unpaid bonuses, or disability plan, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom and any other rights related thereto. The other party hereby waives and releases any and all claims or interest therein.

**ARTICLE X**
**DIVISION OF OTHER ASSETS AND LIABILITIES**
. . . .

10.3 Each party shall have exclusive ownership in all items of property that are currently in his or her possession or control, and the other party waives and releases any and all claim or interest in such items.

Dan died two years after the couple finalized their divorce. Prior to his death, Dan did not change the beneficiary on his 401(k) plan. Dan's daughter from a prior marriage, Chelsea Olson, was appointed as personal representative of his estate. Chelsea and Lynn made competing claims to the proceeds from Dan's 401(k) plan. Sunbeam ultimately distributed the

3

proceeds to Lynn as the named beneficiary in the plan documents pursuant to ERISA.[2]

Chelsea Olson, as personal representative of her late father's estate, filed a verified motion to enforce the Agreement in the family law division of the Miami-Dade County Circuit Court. In the motion, Chelsea asserted that while Sunbeam was required to distribute the 401(k) plan proceeds to Lynn pursuant to ERISA and the plan documents, Lynn had clearly and unambiguously waived any and all right, title, and interest she had in the proceeds. Chelsea further argued that ERISA does not preclude the Estate from bringing a post-distribution action to enforce the contractual waiver and to recover the plan proceeds. Thus, Chelsea sought a court order requiring Lynn to turn over the proceeds to Dan's Estate, or to his four living adult children. The trial court referred the matter to a general magistrate.

---

[2] The Estate does not dispute that Sunbeam was required to distribute the proceeds to Lynn, as the named beneficiary, in conformity with the plan documents. ERISA requires that "[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument" specifying "the basis on which payments are made to and from the plan." 29 U.S.C § 1102(a)(1), (b)(4). In Kennedy v. Plan Administrator for DuPont Savings & Investment Plan, 555 U.S. 285, 300 (2009), the Supreme Court held that an ERISA plan administrator, here Sunbeam, is "obliged to act 'in accordance with the documents and instruments governing the plan' . . . and ERISA provides no exemption from this duty when it comes time to pay benefits." (quoting 29 U.S.C. § 1104(a)(1)(D)).

4

In response to the motion, Lynn asserted that as the first named beneficiary she was entitled to Dan's 401(k) plan proceeds and that she had never waived entitlement to the proceeds under the Agreement. Specifically, Lynn argued that because the Agreement did not specify who is to receive the so-called "death benefits" under the 401(k) plan, the Agreement was insufficient to override the beneficiary designation form, which remained unchanged by Dan after the couple divorced.

Following a hearing, the general magistrate entered its report and recommendation finding that paragraph 9.1 of the Agreement is not a waiver of beneficiary rights because there is no specific reference to "death benefits" or "death beneficiary designations" to override the 401(k) plan document naming Lynn as the first beneficiary. The general magistrate relied on the Supreme Court's decision in Crawford v. Barker, 64 So. 3d 1246 (Fla. 2011), in which Justice Pariente, writing for the majority, stated, in dictum, the following general proposition:

> Absent the marital settlement agreement providing who is or is not to receive the death benefits or specifying the beneficiary, courts should look no further than the named beneficiary on the policy, plan, or account. General language such as language stating who is to receive ownership is not specific enough to override the plain language of the beneficiary designation. Magic words are not required; however, if the parties wish to specify in a marital settlement agreement that a spouse will not receive the death benefits or wish to specify a

5

particular beneficiary, this should be done clearly and unambiguously.

Id. at 1256.

The general magistrate also relied upon Smith v. Smith, 919 So. 2d

525 (Fla. 5th DCA 2005), where the Fifth District similarly stated:

> [W]hile it may be possible in a marital settlement agreement to waive one's right as a beneficiary of insurance policies, that waiver can only be accomplished if the waiving party specifically gives up his or her rights to the "proceeds" of these policies.[n.1] Otherwise, one must look only to the beneficiary designation made by the insured and filed with the insurer.
>
> [n.1] Obviously, some other language such as "death benefits" would likely suffice.

Id. at 528. The general magistrate also found that Florida's revocation-on-

divorce statute enacted after Crawford, section 732.703(2), Florida Statutes

(2017),[3] is inapplicable to the extent that federal law, in this case ERISA,

---

[3] Section 732.703(2), Florida Statutes, provides:
> A designation made by or on behalf of the decedent providing for the payment or transfer at death of an interest in an asset to or for the benefit of the decedent's former spouse is void as of the time the decedent's marriage was judicially dissolved or declared invalid by court order prior to the decedent's death, if the designation was made prior to the dissolution or court order. The decedent's interest in the asset shall pass as if the decedent's former spouse predeceased the decedent. An individual retirement account described in s. 408 or s. 408A of the Internal Revenue Code of 1986, or an employee benefit plan, may not be treated as a trust for purposes of this section.

provides otherwise. Based on these conclusions of law, the general magistrate recommended that the trial court deny the Estate's motion to enforce the Agreement against Lynn.

The Estate filed exceptions to the magistrate's finding that since the Agreement does not expressly state that Lynn waived entitlement to the "death benefits" from Dan's 401(k) plan, Lynn is entitled to those benefits as the named beneficiary. The Estate asserted that if the Agreement was silent as to who was entitled to receive the "death benefits" of the 401(k) plan, then Florida's revocation-on-divorce statute would provide the legal mechanism to automatically revoke Lynn's beneficiary designation and provide a transfer of these benefits as if Lynn had predeceased Dan.

The trial court sustained the Estate's exceptions to the general magistrate's report. In doing so, the trial court found, based on the clear and unambiguous language in the Agreement, that

> Dan did not intend, and Lynn did not expect, to have the proceeds of Dan's 401(k) plan transferred to Lynn upon Dan's death, as much as Lynn did not intend and Dan did not expect to have the proceeds of Lynn's 401(k) plan, if any, transferred to Dan upon Lynn's death.
> . . . .
> [I]n the present case, the [Agreement] specifically dictates who is to receive the ***proceeds*** of the 401(k) plan at issue. The [Agreement] provides under Article IX, "RETIREMENT" that both Dan and Lynn, not only have exclusive ownership over their own

7

401(k) plans, but also the right to receive all increases thereof, **proceeds therefrom** and rights thereto.[4]

The trial court further concluded, relying upon recent cases from several state and federal jurisdictions, that Dan's estate is not precluded from seeking enforcement of the Agreement "simply because Dan forgot to fill out a form." Accordingly, the trial court ordered Lynn to turn over all proceeds received from Dan's 401(k) plan to the Estate's counsel within ten days of its order. Lynn appealed this order.

## ANALYSIS

"We review a trial court's decision to accept or reject a general magistrate's report and recommendations for an abuse of discretion." Lascaibar v. Lascaibar, 156 So. 3d 547, 549 n.1 (Fla. 3d DCA 2015). The trial court "is free to reach a conclusion of law, contrary to that of a master, which he [or she] considers in the exercise of his [or her] judicial discretion produces a more equitable solution to the issues posed for decision." Mounce v. Mounce, 459 So. 2d 437, 437 (Fla. 3d DCA 1984) (citation omitted).

"A marital settlement agreement and a deferred compensation fund are both contracts and subject to contract interpretation principles. Where the

---

[4] (Emphasis in original).

8

terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." Crawford, 64 So. 3d at 1255–56 (noting that courts are "to view settlement agreements as well as the terms of beneficiary-designated policies, plans, or accounts as contracts and to apply the plain language of those documents").

Lynn asserts that the Agreement failed to specify who was to receive the "death benefits" under Dan's 401(k) plan and as such any waiver under the Agreement constitutes a general release, which is insufficient to override the beneficiary designation form. The Estate responds that both Dan and Lynn unambiguously waived any claim or interest, including the right to receive proceeds, from the other's 401(k) plan. We must look to the plain language of the Agreement to determine whether Lynn waived entitlement to Dan's 401(k) plan proceeds.

The Agreement provides the following specific waiver:

> 9.1 Each party shall receive any and all benefits existing by reason of his or her past, present, or future employment . . . including but not limited to any . . . retirement plan . . . 401(k) plan . . . whether matured or unmatured, accrued or unaccrued, vested or otherwise, **together with all increases thereof, the proceeds therefrom** and any other rights related thereto. The other party hereby waives and releases any and all claims or interest therein.

(emphasis added). This provision clearly mentions Dan's 401(k) plan. According to the Supreme Court's decision in Crawford, "when the

9

settlement agreement mentions the disputed policy or plan, the question then becomes whether the language in the settlement agreement is specific enough to override the predissolution beneficiary." 64 So. 3d at 1253. As mentioned earlier, the Supreme Court in <u>Crawford</u> generally stated:

> . . . absent the marital settlement agreement providing who is or is not to receive the death benefits or specifying who is to be the beneficiary, courts should look no further than the named beneficiary in the separate document of the policy, plan, or account. General language in a marital settlement agreement, such as language stating who is to receive ownership, is not specific enough to override the plain language of the beneficiary designation in the separate document. The spouse, who owns the policy, plan, or account following the dissolution of marriage, is otherwise free to name any individual as the beneficiary; however, if the spouse does not change the beneficiary, the beneficiary designation in the separate document controls.

<u>Id.</u> at 1248.

Here, the plain language of paragraph 9.1 under the Agreement is specific enough to override the beneficiary designation form. The Agreement references the disputed 401(k) plan and the "proceeds therefrom." The Agreement further specifically and unequivocally provides that Dan and Lynn "shall receive any and all benefits" of his or her own 401(k) plan, including "all increases thereof, the proceeds therefrom and any other rights related thereto," of which the other party "waives and releases any and all claims or interest therein." This is not the general language, merely stating who is to

10

receive ownership of the plan, disapproved of by the Supreme Court in Crawford.

Indeed, the general language in the settlement agreement in Crawford provided that the husband "shall retain retirement money" under a deferred compensation plan. As the trial court properly noted in the order under review:

> The distinction between the present case and Crawford is clear and obvious. In Crawford the marital settlement agreement included only general language as to who is to receive ownership of the deferred compensation plan, but failed to identify who was to receive the proceeds of the deferred compensation plan. Crawford noted that while a party may waive one's right as a beneficiary, that waiver can only be accomplished if the waiving party specifically gives up his or her rights to the proceeds of the plan.

We agree with the trial court's sound analysis. The argument that the Agreement is not specific enough to override the beneficiary designation form because the words "death benefits" were not used is unconvincing. See Crawford, 64 So. 3d at 1256 (noting that "[m]agic words are not required" in a marital settlement agreement in order to specify who is to receive the proceeds or benefits of a policy, plan, or account). We decline any invitation

11

to rewrite the Agreement, which was freely and voluntarily entered into by Dan and Lynn.[5]

Likewise, in <u>Smith</u>, the marital settlement agreement generally referenced a retirement plan and provided, "Husband shall receive as his own and Wife shall have no further rights or responsibilities regarding these assets." The Fifth District concluded:

> [T]he marital settlement agreement did not mention a disposition of **the proceeds** of the plans and accounts, and the decedent never changed the beneficiary designations. Under these circumstances, courts "need look no further than the plain language of the policy" to determine who the decedent intended as beneficiary of the proceeds.

919 So. 2d at 528 (emphasis added) (quoting <u>In re Estate of Dellinger</u>, 760 So. 2d 1016, 1017 (Fla. 4th DCA 2000)). Here, in contrast, the Agreement expressly mentions the "proceeds" of the disputed 401(k) plan.[6]

---

[5] We also note the Supreme Court used the words "death benefits" and "proceeds" interchangeably in <u>Crawford</u>. 64 So. 3d at 1249 (". . . in the absence of specific reference in the agreement to the proceeds (or death benefits), the recipient is determined by looking only to the designated beneficiary."); <u>id.</u> at 1257 (". . . the settlement agreement in this case did not specify that Manuel Crawford was to receive the proceeds, or death benefits, of the deferred compensation fund.").

[6] Notably, in <u>Smith</u>, the court also used the terms "proceeds" and "death benefits" interchangeably throughout its opinion. <u>See</u> <u>id.</u> at 527 ("The agreement, however, made no mention of the *proceeds* or death benefits of the policies and plans." (emphasis in original)); <u>id.</u> at 528 n.1 (noting that a "waiver can only be accomplished if the waiving party specifically gives up

In addition to the specific waiver of the 401(k) plan proceeds, and as the trial court properly found, the Agreement also contained a general waiver provision: Dan and Lynn "shall have exclusive ownership in all items of property that are currently in his or her possession or control, and the other party waives and releases any and all claim or interest in such items."

Accordingly, based on the plain language of the Agreement, Dan and Lynn intended to receive all rights and benefits, including the proceeds, from their respective 401(k) plans and unambiguously waived any and all claims or interests in the other's 401(k) plan. See Crawford, 64 So. 3d at 1256–57.

In further support of her entitlement to Dan's 401(k) plan proceeds, Lynn attempts to argue that Florida's revocation-on-divorce statute is expressly preempted by ERISA. As noted earlier, following the Supreme Court's decision in Crawford, in 2012 the Legislature enacted Florida's revocation-on-divorce statute to address the effects of a dissolution of marriage upon a pre-dissolution beneficiary designation form executed in favor of a former spouse. But that issue is not raised here.

The definitive question here is whether Lynn waived entitlement to the proceeds paid over to her as the named beneficiary by private agreement—

_____

his or her rights to the 'proceeds' of these policies" and "[o]bviously, some other language such as 'death benefits' would likely suffice").

13

not by operation of law. Therefore, in holding that Lynn waived her entitlement to the disputed 401(k) plan proceeds under the Agreement, we are not required to delve into statutory interpretation or venture into the thicket of ERISA preemption.[7] Because the marital settlement agreement clearly provides that Dan and Lynn shall receive the proceeds from their respective 401(k) plan and specifically waive any entitlement to such proceeds from the other's plan, application of Florida's revocation-on-divorce statute is not required, and we therefore express no view as to its validity.

The more pertinent question, which is one of first impression for this Court, is whether Dan's estate can bring this state law action against Lynn, as the named beneficiary, to enforce a contractual waiver after distribution of the ERISA-governed 401(k) plan proceeds. This inquiry was left for another day by the Supreme Court in Kennedy. 555 U.S. at 299 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the named beneficiary] to obtain the benefits after they were distributed."). Since then, several state and federal appellate courts have been called upon to answer it. The Eleventh Circuit

---

[7] As the Fifth Circuit Court of Appeals wisely observed, "any court forced to enter the ERISA preemption thicket sets out on a treacherous path." Gonzales v. Prudential Ins. Co. of Am., 901 F.2d 446, 451–52 (5th Cir. 1990).

Court of Appeals did so in <u>MetLife Life and Annuity Company of Connecticut v. Akpele</u>, 886 F.3d 998 (11th Cir. 2018).

In <u>MetLife</u>, the Eleventh Circuit held that, while "a party who is not a named beneficiary of an ERISA plan may not sue the plan for any plan benefits," (which is not the case here), that party may sue the plan beneficiary to recover those benefits, "but only after the plan beneficiary has received the benefits." <u>Id.</u> at 1007. In reaching this decision, the Eleventh Circuit relied upon a sister appellate court's decision, <u>Estate of Kensinger v. URL Pharma, Inc.</u>, 674 F.3d 131 (3d Cir. 2012),[8] which held that once the benefits were distributed to the designated beneficiary, ERISA is no longer implicated. <u>Id.</u> at 137 ("[T]o the extent that ERISA is concerned with the expeditious payment of plan proceeds to beneficiaries, permitting suits against beneficiaries <u>after</u> benefits have been paid does not implicate any

---

[8] In <u>Estate of Kensinger</u>, the Third Circuit held that an estate can sue a former spouse to enforce a contractual waiver and to recover disputed ERISA-governed 401(k) plan proceeds after the plan administrator distributes the proceeds to the former spouse as the named beneficiary. 674 F.3d at 132.

concern of expeditious payment or undermine any core objective of ERISA.")

(emphasis in original).[9]

In line with <u>MetLife</u>, <u>Kensinger</u>, and other analogous decisions,[10] the

Estate asserts that ERISA does not preempt post-distribution suits against

named beneficiaries to enforce a contractual waiver of plan proceeds. We

agree and approve the growing body of case law supporting the Estate's

position that it can sue to recover the proceeds after they are distributed by

the ERISA plan administrator pursuant to the plan documents.

---

[9] Courts have recognized three important ERISA objectives: "(1) simple administration of plans; (2) avoiding double liability for plan administrators; and (3) ensuring that beneficiaries receive funds promptly." <u>MetLife</u>, 886 F.3d at 1007 (citing <u>Kennedy</u>, 555 U.S. at 301).

[10] <u>See, e.g.</u>, <u>Andochick v. Byrd</u>, 709 F.3d 296, 301 (4th Cir. 2013) (holding that "ERISA does not preempt post-distribution suits against ERISA beneficiaries"); <u>Appleton v. Alcorn</u>, 728 S.E.2d 549, 550 (Ga. 2012) (holding that a decedent's estate could bring a post-distribution suit alleging breach of contract against the decedent's former spouse to enforce a contractual waiver of her right to retain proceeds of decedent's employer-provided 401(k) plan); <u>Sweebe v. Sweebe</u>, 712 N.W. 2d 708, 712 (Mich. 2006) ("[W]hile a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds. Once the proceeds are distributed, the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds."); <u>Pardee v. Pers. Representative for Est. of Pardee</u>, 112 P.3d 308, 312–16 (Okla. Civ. App. 2004) (holding that an estate may enforce a common law waiver against a named beneficiary because the "pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed").

## CONCLUSION

Because the trial court is not bound by the general magistrate's conclusions of law, we hold that the trial court did not abuse its discretion in rejecting the magistrate's erroneous interpretation of the Agreement and sustaining the Estate's exceptions. Lynn Martinez explicitly waived any entitlement to the proceeds of Dan Olson's 401(k) plan under the marital settlement agreement. Therefore, the Estate is entitled to bring this action against Lynn to enforce that contractual waiver and to recover the plan proceeds.

Affirmed.